Callahan, J.
(dissenting). The appellant, Peter Spinello, has been convicted of the crime of robbery in thé first degree and sentenced to a term of imprisonment from twenty-five to, thirty years as a second offender. The question presented upon this appeal is whether there was sufficient legal evidence of the identification of Spinello as a participant in the robbery. The witness who attempted to identify Spinello was the complainant, Nathan Hyman.
Hyman first testified to the conduct of a person not arrested, who was the initial actor in the robbery, and when he got to the point in his story where he told of being walked out of his office by this man under the point of a gun, said: “ As we approached the other man near the door he joined us.” Being asked whether by “ the other man ” he meant defendant Spinello, Hyman answered in the affirmative.
Apparently under the assumption that the question of Spinello’s identification had been put in issue within the meaning of section 393-b of the Code of Criminal Procedure, Hyman was then interrogated by the District Attorney without objection by defendant’s counsel as to his prior identification of Spinello at the station house on the evening of the day of the' crime. Without giving the circumstances of the identification, Hyman stated that the police had two persons under arrest whom he confronted.' He then testified:
“ Q. Do you see these two men in court today? A. Presumably they are the same two men.
“ Q. Well, where are they? A. Well, if that is the two men I saw, that is the two men here.
“ Q. Well, now, look at them. A. I am looking at them.
“ Q. Did you recognize either one of those, or both of them as the men who were in your place? A. At the time of the Elizabeth Street Station visit I identified one of these two men.
“ Q. Which one did you identify? A. The shorter of the two (indicating).”
The witness thereupon pointed out Spinello.
Shortly thereafter the witness in answer to a direct question categorically stated that he had seen the defendant Spinello in his place of business at the time of the robbery and described his actions in participating in the crime. In replying to a question by the court as to whether the man whose actions he was describing was Spinello, the witness said: “ The day I identified him I thought it was Spinello. I am not sure, after three years. I thought he was smaller than he is, as a matter of fact.”
*719 Thereafter under further interrogation by the court as to whether he recognized Spinello at the police station as the man that was at his place of business, the witness answered categorically in the affirmative. The court then asked: “Do you now state he is, or do you think he is, or do you presume he is ’ ’, and the witness stated: “ I said he is, Judge.”
Upon cross-examination the following questions were put and the quoted answers given:
“ Q. You told us that at the present time you are not sure that he, the defendant sitting here, Spinello, was the man whom you saw that day; is that true ? A. That is true.
“ Q. As a matter of fact, as you sit there, Mr. Hyman, you could not swear that the defendant, Spinello, was the man whom you saw in your place- A. As I am sitting here I would not swear.”
As is indicated in the prevailing opinion, there was additional testimony by the police officers of contradictory stories told to them by Spinello after his arrest as to his whereabouts on the morning of the crime, but no admission is claimed to have been made by Spinello to the police that he was at the place where the crime was committed. There was the fact of Spinello’s presence several hours later in the car claimed to have been used in the crime, though there appears to be a gap in the proof as to the license number of the car. It was established that Spinello had $90 in cash which he claimed to have won at gambling. There was also testimony from which the jury could find, that the application for registration of the car was in a fictitious name forged by the defendant Spinello. The latter was a circumstance strongly tending to connect Spinello with ownership or control of the car, if not with the robbery. However, taking all of these surrounding circumstances together, we do not think that they would support a conviction without some sworn testimony that Spinello was at the scene of the crime, and in the premises of Hyman.
Thus, it becomes essential for us to consider the probative force and sufficiency of the evidence with regard to identification of Spinello,. including the testimony of Hyman as to the prior identification at the station house.
Prior to the adoption of section 393-b of the Code of Criminal Procedure, the testimony of Hyman concerning prior identification would not have been competent under the present circumstances (People v. Jung Hing, 212 N. Y. 393). Under the common law such proof would have been deemed an unsworn *720 self-serving declaration. Even when under the common law there were circumstances warranting receipt of proof of prior identification as a prior consistent statement, it was “not admitted to prove or disprove any fact involved in the issue on trial, but simply to corroborate or support the credibility of the witness who may be in some manner impeached.” (Maitland v. Citizens’ Nat. Bank, 40 Md. 540, 559; People v. Jung Ping, supra, p. 402.)
There was a somewhat broader rule in effect in the Federal courts, and a still wider rule advocated by a learned text written on the law of evidence (Di Carlo v. United States, 6 F. 2d, 364: 2 Wigmore on Evidence [2d ed.], § 1129). The Baumes Commission in its report recommending the adoption of the new section made some reference to this divergence in regard to the views of the Federal and State courts as to the receipt of proof of prior identification. But it is quite clear from the language of the new sectiqn that the Legislature did not intend to adopt the Federal rule in its entirety, for the Federal courts contrary to the new statute, permitted persons other than the one who had made prior identification to testify thereto (People v. Infantino, 224 App. Div. 193). Furthermore, even the Federal courts recognized that there was some limitation to the instances where the proof might be used, i.e., where there was a question raised as to the motive of a witness to fabricate or other challenge for bias (Di Carlo v. United States, supra).
In construing another statute permitting introduction of proof of prior inconsistent statements by a witness where such statements were made in writing or under oath (Civ. Prac. Act, § 343-a; see, also, Code Crim. Pro., § 8-a) our Court of Appeals held that proof of such statements would not constitute substantive evidence or evidence in chief (Matter of Roge v. Valentine, 280 N. Y. 268). There would seem to be less reason for considering statements concerning an unsworn prior oral identification as affirmative or substantive evidence. It is clear, at least, we think, that section 393-b does not mean that proof of prior identification standing alone would support a judgment of conviction. We think that the statute means that where identification is at issue and a witness is in some degree subject to a challenge for bias or inconsistency, proof of prior identification may be received even though the circumstances might not be such as to warrant proof of prior consistent statements under common-law rules of evidence. But as such proof would. merely relate to a prior unsworn statement the jury could merely give *721 it such weight as it deemed proper upon the question of credibility of the witness or as corroborating or supporting other substantive evidence.
We deem that the substance and effect of Hyman’s testimony was that he was uncertain at the trial as to whether Spinello was one of the men he saw in his place of business participating in the robbery. We think that he also intended to say that he was uncertain upon the trial that the man he saw at the station house was the defendant in court though there did not seem to be any particular issue made of that point. The question remains as to whether Hyman intended to swear that he was presently certain that the man he saw at the station house was one of the robbers. This we concede would constitute substantive proof of identification. Though at one time Hyman did appear to so testify, he made contrary or equivocal statements on this score at other points in his testimony. Evidence of identification should consist of strong and cogent proof (People v. Cassidy, 160 App. Div. 651). We fail to find that degree of proof here. The testimony is contradictory and far from clear. There is no proof whatever as to the circumstances under which the alleged prior identification in the station house was made.
In its charge to the jury the court made no attempt to distinguish between the probative force of extrajudicial statements as to prior identification and present sworn, testimony.
In view of the state of the record on the essential point of identification, we think that in the interest of justice a new trial should be ordered.
The judgment should be reversed and a new trial ordered.
Glen non, J. P., and Shientag, J., concur with Cohn, J.; Callahan, J., dissents and votes to reverse and grant a new trial, in an opinion in which Dore, J., concurs.
Judgment affirmed.